# EXHIBIT "2"

CAUSE NO. 13-6-14449

| | | |
|---|---|---|
| MIRAMAR PETROLEUM, INC. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| V | § | 267th JUDICIAL DISTRICT |
| | § | |
| | § | |
| AMERICAN PETROLEUM DRILLING | § | |
| FLUIDS, INC. D/B/A/ AMERICAN | § | |
| DRILLING FLUIDS, INC , NICKLOS | § | |
| DRILLING COMPANY, and | § | |
| CIMARRON ENGINEERING, INC. | § | JACKSON COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

### Discovery Plan

1. Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3.

### Parties

2. Miramar Petroleum, Inc. is a Texas corporation who may be reached through undersigned counsel.

3. American Drilling Fluids, Inc. ("ADF") is a Texas corporation with is home office at 16350 Park Ten Place, Suite 260, Houston, TX 77084. ADF has been properly served and entered an appearance in this case.

4. Nicklos Drilling Company ("Nicklos") is a Texas corporation with its home office at 3355 W. Alabama, Suite 630, Houston, TX 77098. Nicklos has been properly served and has entered an appearance in this case.

5. Cimarron Engineering, Inc. ("Cimarron") is a foreign corporation organized in the state of Oklahoma with its home office at 15405 Winding Creek Dr., Collinsville, OK 74021. Cimarron may be served by serving its registered agent for service James Geryk at 620 East Ailsie, Kingsville, TX 78363.

ACE 00069

## Jurisdiction and Venue

6. The damages in this case are in excess of minimum jurisdictional limits of the Court.

7. All acts or omissions giving rise to the causes of action herein took place in Jackson County.

## Facts

8. Miramar is an independent oil and gas exploration and production company. After diligent research Miramar found a promising location to drill a well. Miramar leased the mineral rights from a Mr. Sartwelle.

9. Miramar hired Defendant ADF to manage the mud and other drilling fluids required for a well. Miramar hired Defendant Nicklos to drill the well. Defendants indicated they had worked together before and had a good working relationship.

10. Miramar relied on ADF's descriptions in its estimate. ADF represented that it had worked on wells of similar depths in the same geologic area and was aware of the requirements of wells of greater depths in the same geologic formations. ADF's estimate indicated that mud weight should be 12 pounds at 8,000 feet and 12.5 at 8,700 feet. The estimate included a "Mud Discussion" indicating that the hole should be monitored closely below 8,500 feet. These representations formed the basis of the bargain between Miramar and ADF.

11. Miramar hired Defendant Cimarron to supervise and direct operations at the wellsite. Cimarron is in the business of supplying individuals with appropriate training, experience, and knowledge to supervise and direct drilling operations. Cimarron's "company man" lives on the wellsite and issues daily reports to the home office where their work is supervised.

12. On April 1, 2013 drilling of the Sartwelle #1 begins. There are delays and the drilling takes longer than expected.

ACE 00070

13. On April 5, 2013 after setting surface casing Cimarron's employee, Tom Cann, left the wellsite and was replaced by Roy Saenz, another Cimarron employee. On April 12, 2013 Roy was called to another job and turned the well over to Don Long, another Cimarron employee.

14. On April 15, 2013 the well reaches 8,500 feet in depth. Later on that day the well reaches 8,600 feet, according to reports the mud weight is between 11.9 and 12.1 pounds per gallon. This is lighter than 12.5 pounds per gallon. This provides less pressure to keep the well stable.

15. Nicklos, ADF, and Cimarron should have recognized that the well was on the verge of blowing out and that the mud weight was insufficient.

16. At about 8630 feet pressure from the well overpowers the weight of the mud and the well blows out. The blow out damages the well to the extent that access to valuable petroleum reserves is obstructed. Due to equipment, drill pipe, and tools that were broken in the well, the only way to access these reserves is to drill another well near the location of the Sartwelle #1.

17. ADF had a mud engineer who had knowledge of the ADF's Mud Discussion and should have been monitoring the mud, the pressures in the well, and the drilling. The mud engineer should have been reporting to Cimarron. Cimarron had a company man on the site who should have been monitoring the mud, the pressures in the well, and the drilling. Nicklos had experienced well operators on site who should have recognized that the pressure in the well exceeded the weight of the mud and reported this to ADF and Cimarron.

18. In spite of their representations, experience, and supervision one or more of the defendants caused or contributed to the blowout in the ways more fully described below.

ACE 00071

## Count One – ADF's Breach of Contract

19. Miramar and ADF entered into a valid, enforceable contract;

20. Miramar performed its contractual obligations;

21. ADF contracted to monitor the well closely, and keep the drilling mud at an appropriate weight;

22. ADF breached the contract; and

23. ADF's breach caused Miramar injury.

## Count Two – Nicklos' Breach of Contract

24. Miramar and Nicklos entered into a valid, enforceable contract;

25. Miramar performed its contractual obligations;

26. Nicklos agreed to use reasonable means to prevent and control blowouts;

27. Nicklos breached the contract; and

28. Nicklos' breach caused Miramar injury.

## Count Three – Cimarron's Breach of Contract

29. Miramar and Cimarron entered into and oral contract;

30. Miramar performed its contractual obligations;

31. Cimarron agreed to supervise and direct operations at the well;

32. Cimarron breached the contract; and

33. Cimarron's breach caused Miramar injury.

## Count Four – Breach of Warranty by ADF

34. ADF sold drilling mud services to Miramar;

35. ADF made a representation to Miramar about the quality or characteristics of the services by ADF's description;

36. The representation became part of the basis of the bargain;

37. ADF breached the warranty;

38. Miramar suffered injury.

ACE 00072

## Count Five – Negligent Supervision

39. Cimarron had a duty to Miramar to supervise its employees in a reasonable manner;

40. Cimmaron breached this duty by sending out an employee without adequate supervision;

41. Because of the lack of supervision the well blew out; and

42. Said blowout caused Miramar to suffer damages.

## Attorney's Fees

43. Plaintiff is entitled to recover reasonable and necessary attorney fees under TEXAS CIVIL PRACTICE & REMEDIES CODE chapter 38 because this is a suit for breach of a contract.

## Jury Demand

44. Plaintiff hereby demands a trial by jury and has tendered the appropriate fee.

ACE 00073

Prayer

WHEREFORE Plaintiff prays that this Honorable Court grant it the following relief from Defendants:

1. Actual Damages;

2. Damages for lost production;

3. Economic Damages;

4. Plaintiff's reasonable and necessary attorney's fees;

5. Costs of the action; and

6. Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

William M. Clanton
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.
926 Chulie Dr.
San Antonio, Texas 78216
210 226 0800
210 338 8660 fax

ACE 00074

## CERTIFICATE OF SERVICE

On this 6th day of August 2017 a true and correct copy of the foregoing was served on the below listed parties by the method indicated.

Ray Barnes
Tucker, Barnes, Garcia, DE LA Garza, P.C.
JPMorgan Chase Building
712 Main St., Suite 1600
Houston, Texas 77002-3297
VIA FAX: 713-228-7329

Amanda Speer
Dore Law Group, P.C.
17.17 Park Row, Suite 160
Houston, Texas 77084
VIA FAX: 281 200 0751

William M. Clanton

ACE 00075

CAUSE NO. 13-6-14449

| MIRAMAR PETROLEUM, INC. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| V | § | 267th JUDICIAL DISTRICT |
| | § | |
| | § | |
| AMERICAN PETROLEUM DRILLING | § | |
| FLUIDS, INC. D/B/A/ AMERICAN | § | |
| DRILLING FLUIDS, INC , NICKLOS | § | |
| DRILLING COMPANY, and | § | |
| CIMARRON ENGINEERING, LLC. | § | JACKSON COUNTY, TEXAS |

## PLAINTIFF'S SECOND AMENDED PETITION

### Discovery Plan

1. Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3.

### Parties

2. Miramar Petroleum, Inc. is a Texas corporation who may be reached through undersigned counsel.

3. American Petroleum Drilling Fluids, Inc. d/b/a American Drilling Fluids, Icn. ("ADF") is a Texas corporation with is home office at 16350 Park Ten Place, Suite 260, Houston, TX 77084. ADF has been properly served and entered an appearance in this case.

4. Nicklos Drilling Company ("Nicklos") is a Texas corporation with its home office at 3355 W. Alabama, Suite 630, Houston, TX 77098. Nicklos has been properly served and has entered an appearance in this case.

5. Cimarron Engineering, LLC f/k/a Cimarron Engineering Corp. ("Cimarron") is a Texas corporation with its home office at 620 E. Alisie Ave, Kingsville, TX 78363. Cimarron may be served by serving its registered agent for service James Geryk at 620 East Ailsie, Kingsville, TX 78363.

## Jurisdiction and Venue

6. The damages in this case are in excess of minimum jurisdictional limits of the Court.

7. All acts or omissions giving rise to the causes of action herein took place in Jackson County.

## Facts

8. Miramar is an independent oil and gas exploration and production company. After diligent research Miramar found a promising location to drill a well. Miramar leased the mineral rights from a Mr. Sartwelle.

9. Miramar hired Defendant ADF to manage the mud and other drilling fluids required for a well. Miramar hired Defendant Nicklos to drill the well. Defendants indicated they had worked together before and had a good working relationship.

10. Miramar relied on ADF's descriptions in its estimate. ADF represented that it had worked on wells of similar depths in the same geologic area and was aware of the requirements of wells of greater depths in the same geologic formations. ADF's estimate indicated that mud weight should be 12 pounds at 8,000 feet and 12.5 at 8,700 feet. The estimate included a "Mud Discussion" indicating that the hole should be monitored closely below 8,500 feet. These representations formed the basis of the bargain between Miramar and ADF.

11. Miramar hired Defendant Cimarron to supervise and direct operations at the wellsite. Cimarron is in the business of supplying individuals with appropriate training, experience, and knowledge to supervise and direct drilling operations. Cimarron's "company man" lives on the wellsite and issues daily reports to the home office where their work is supervised.

12. On April 1, 2013 drilling of the Sartwelle #1 begins. There are delays and the drilling takes longer than expected.

13. On April 5, 2013 after setting surface casing Cimarron's employee, Tom Cann, left the wellsite and was replaced by Roy Saenz, another Cimarron employee. On April 12, 2013 Roy was called to another job and turned the well over to Don Long, another Cimarron employee.

14. On April 15, 2013 the well reaches 8,500 feet in depth. Later on that day the well reaches 8,600 feet, according to reports the mud weight is between 11.9 and 12.1 pounds per gallon. This is lighter than 12.5 pounds per gallon. This provides less pressure to keep the well stable.

15. Nicklos, ADF, and Cimarron should have recognized that the well was on the verge of blowing out and that the mud weight was insufficient.

16. At about 8630 feet pressure from the well overpowers the weight of the mud and the well blows out. The blow out damages the well to the extent that access to valuable petroleum reserves is obstructed. Due to equipment, drill pipe, and tools that were broken in the well, the only way to access these reserves is to drill another well near the location of the Sartwelle #1.

17. ADF had a mud engineer who had knowledge of the ADF's Mud Discussion and should have been monitoring the mud, the pressures in the well, and the drilling. The mud engineer should have been reporting to Cimarron. Cimarron had a company man on the site who should have been monitoring the mud, the pressures in the well, and the drilling. Nicklos had experienced well operators on site who should have recognized that the pressure in the well exceeded the weight of the mud and reported this to ADF and Cimarron.

18. In spite of their representations, experience, and supervision one or more of the defendants caused or contributed to the blowout in the ways more fully described below.

ACE 00078

## Count One – ADF's Breach of Contract

19. Miramar and ADF entered into a valid, enforceable contract;

20. Miramar performed its contractual obligations;

21. ADF contracted to monitor the well closely, and keep the drilling mud at an appropriate weight;

22. ADF breached the contract; and

23. ADF's breach caused Miramar injury.

## Count Two – Nicklos' Breach of Contract

24. Miramar and Nicklos entered into a valid, enforceable contract;

25. Miramar performed its contractual obligations;

26. Nicklos agreed to use reasonable means to prevent and control blowouts;

27. Nicklos breached the contract; and

28. Nicklos' breach caused Miramar injury.

## Count Three – Cimarron's Breach of Contract

29. Miramar and Cimarron entered into and oral contract;

30. Miramar performed its contractual obligations;

31. Cimarron agreed to supervise and direct operations at the well;

32. Cimarron breached the contract; and

33. Cimarron's breach caused Miramar injury.

## Count Four – Breach of Warranty by ADF

34. ADF sold drilling mud services to Miramar;

35. ADF made a representation to Miramar about the quality or characteristics of the services by ADF's description;

36. The representation became part of the basis of the bargain;

37. ADF breached the warranty;

38. Miramar suffered injury.

## Count Five – Negligent Supervision

39. Cimarron had a duty to Miramar to supervise its employees in a reasonable manner;

40. Cimmaron breached this duty by sending out an employee without adequate supervision;

41. Because of the lack of supervision the well blew out; and

42. Said blowout caused Miramar to suffer damages.

## Attorney's Fees

43. Plaintiff is entitled to recover reasonable and necessary attorney fees under TEXAS CIVIL PRACTICE & REMEDIES CODE chapter 38 because this is a suit for breach of a contract.

## Jury Demand

44. Plaintiff hereby demands a trial by jury and has tendered the appropriate fee.

**Prayer**

WHEREFORE Plaintiff prays that this Honorable Court grant it the following relief from Defendants:

1. Actual Damages;

2. Damages for lost production;

3. Economic Damages;

4. Plaintiff's reasonable and necessary attorney's fees;

5. Costs of the action; and

6. Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

William M. Clanton
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.
926 Chulie Dr.
San Antonio, Texas 78216
210 226 0800
210 338 8660 fax

ACE 00081

## CERTIFICATE OF SERVICE

On this 10th day of October 2013 a true and correct copy of the foregoing was served on the below listed parties by the method indicated.

Roy Barnes
Tucker, Barnes, Garcia, DE LA Garza, P.C.
JPMorgan Chase Building
712 Main St., Suite 1600
Houston, Texas 77002-3297
VIA FAX: 713-228-7329

Amanda Speer
Dore Law Group, P.C.
1717 Park Row, Suite 160
Houston, Texas 77084
VIA FAX: 281 200 0751

Cimarron Engineering, Inc.
620 E. Ailsie Ave.
Kingsville, TX 78363
VIA CMRRR#7012 3460 0001 6845 6018

William M. Clanton

ACE 00082

| | | |
|---|---|---|
| MIRAMAR PETROLEUM, INC. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| V | § | 267th JUDICIAL DISTRICT |
| | § | |
| | § | |
| AMERICAN PETROLEUM DRILLING | § | |
| FLUIDS, INC. D/B/A/ AMERICAN | § | |
| DRILLING FLUIDS, INC, NICKLOS | § | |
| DRILLING COMPANY, and | § | |
| CIMARRON ENGINEERING, LLC. | § | JACKSON COUNTY, TEXAS |

## PLAINTIFF'S THIRD AMENDED PETITION

### Discovery Plan

1. Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3.

### Parties

2. Miramar Petroleum, Inc. ("Miramar") is a Texas corporation who may be reached through undersigned counsel.

3. American Petroleum Drilling Fluids, Inc. d/b/a American Drilling Fluids, Icn. ("ADF") has answered and appeared in this case.

4. Nicklos Drilling Company ("Nicklos") has answered and appeared in this case.

5. Cimarron Engineering, LLC f/k/a Cimarron Engineering Corp. ("Cimarron") has answered and appeared in this case.

ACE 00083

## Jurisdiction and Venue

6. The damages in this case are in excess of minimum jurisdictional limits of the Court.

7. All acts or omissions giving rise to the causes of action herein took place in Jackson County.

## Facts

8. Miramar is an independent oil and gas exploration and production company. After diligent research Miramar found a promising location to drill a well. Miramar leased the mineral rights from a Mr. Sartwelle.

9. Miramar, as the operator of the Sartwelle #1, hired Defendant ADF to develop a "mud program" and manage the mud and other drilling fluids required in drilling a well. Miramar hired Defendant Nicklos to provide a rig, crew, and drill the well. Defendants Nicklos and ADF indicated they had worked together before and had a good working relationship.

10. Miramar relied on ADF's descriptions in its estimate. ADF represented that it had worked on wells of similar depths in the same geologic area and was aware of the requirements of wells of greater depths in the same geologic formations. ADF's estimate indicated that mud weight should be 12 pounds at 8,000 feet and 12.5 at 8,700 feet. The estimate included a "Mud Discussion" indicating that the hole should be monitored closely below 8,500 feet. These representations formed the basis of the bargain between Miramar and ADF.

ACE 00084

11. Cimarron, among other things, supplies "company men" to operators who drill wells. Cimarron is in the business of supplying individuals with appropriate training, experience, and knowledge to supervise and direct drilling operations. Cimarron's "company man" lives in a trailer on the wellsite and issues daily reports on drilling activities.

12. Miramar hired Cimarron to provide a company man for Miramar on the Sartwelle #1.

13. On April 1, 2013 drilling of the Sartwelle #1 begins. There are delays and the drilling takes longer than expected.

14. On April 5, 2013 after setting surface casing Cimarron's employee, Tom Cann, left the wellsite and was replaced by Roy Saenz, another Cimarron employee. On April 12, 2013 Mr. Saenz was called to another job and turned the well over to Don Long, another Cimarron employee.

15. Mirmar paid for real time monitoring service so that each defendant could monitor the progress of the drilling, the mud weight, and other vital information generated in drilling the well.

16. At 6am on April 15, 2013 Nicklos' day crew takes the well over from the night crew. As part of taking over the well they perform a blow out preventer drill. A blow out preventer drill includes a dry run of blow out prevention actions.

17. Later that day the well reaches 8,500 feet in depth then 8,600 feet. According to reports the mud weight is between 11.9 and 12.1 pounds per gallon. This is lighter than 12.5 pounds per gallon in ADF's mud program and is insufficient to keep the underground pressures from pushing the mud out of the well.

ACE 00085

18. Nicklos, ADF, and Cimarron should have recognized that the well was on the verge of blowing out and that the mud weight was insufficient. If any of the defendants had recognized that the well was going to blow out then they could have stopped the drilling in time to save the well.

19. At about 8,630 feet, pressure from the well overpowers the weight of the mud and the crew loses control of the rig. The driller attempts to close the blow out preventers. Rig equipment that is not in good condition keeps the well from being closed quickly.

20. The blow out damages the well to the extent that access to valuable petroleum reserves is obstructed. Due to equipment, drill pipe, and tools that were broken and/or stuck in the well as a result of the blow out, the only way to access these reserves is to drill another well near the location of the Sartwelle #1.

21. ADF had a mud engineer who had knowledge of the ADF's mud program and should have been monitoring the mud, the pressures in the well, and the drilling. The mud engineer should have been reporting to Cimarron. Cimarron had a company man on the site who should have been monitoring the mud, the pressures in the well, and the drilling. Nicklos had experienced well operators on site who should have recognized that the well could not be closed quickly and that mud weight was insufficient.

22. In spite of their representations, experience, and supervision one or more of the defendants caused or contributed to the blowout in the ways more fully described below.

ACE 00086

**Count One – ADF's Breach of Contract**

23. Miramar and ADF entered into a valid, enforceable contract;

24. Miramar performed its contractual obligations;

25. ADF contracted to monitor the well closely, and keep the drilling mud at an appropriate weight;

26. ADF breached the contract; and

27. ADF's breach caused Miramar injury.

**Count Two – Nicklos' Breach of Contract**

28. Miramar and Nicklos entered into a valid, enforceable contract;

29. Miramar performed its contractual obligations;

30. Nicklos in Subparagraph 8.1 of the contract, agreed to "maintain well control equipment in good condition at all times and use all reasonable means to prevent and control fires and blowouts and to protect the hole";

31. Nicklos breached the contract in one of more of the following ways:

   a. Failing to keep well control equipment in good condition at all times;
   b. Failing to use all reasonable means to prevent and control blowouts; and/or
   c. Failing to use all reasonable means to protect the hole.

32. Nicklos' breach caused Miramar injury.

Plaintiff's Third Amended

ACE 00087

## Count Three - Nicklos' Fraud by Nondisclosure

33. When a party makes a representation, it has a duty to disclose material facts when it discovers new information makes the earlier representation misleading or untrue. Here, Nicklos agreed to provide specific equipment and to keep it good condition at all times. Specifically:

34. Miramar and Nicklos entered into a contract;

35. Nicklos represented to Miramar that it would keep its equipment in good condition at all times;

36. The representation was material. Nicklos attached a copy of the equipment material to the agreement to the contract. This list included a Koomey 5 station accumulator with remote panel;

37. When Nicklos learned that its equipment was not in good repair, it had a duty to disclose that its earlier representations had become untrue. Namely that the equipment had fallen out of good condition and that it was no longer providing the Koomey 5 accumulator with remote panel;

38. Nicklos intended that Miramar rely on this lack of disclosure;

39. Miramar's did in fact rely on Nicklos' failure to disclose; and

40. This caused Miramar to suffer injury.

## Count Four - Cimarron's Breach of Contract

41. Miramar and Cimarron entered into an oral contract for Cimarron to provide company man services;

ACE 00088

42. Miramar performed its contractual obligations;

43. Cimarron agreed to provide company men to perform their duties with care, skill, and competence;

44. Cimarron breached the contract; and

45. Cimarron's breach caused Miramar injury.

### Count Five – Breach of Warranty by ADF

46. ADF sold drilling mud services to Miramar;

47. ADF made a representation to Miramar about the quality or characteristics of the services by ADF's description;

48. The representation became part of the basis of the bargain;

49. ADF breached the warranty; and

50. Miramar suffered injury.

### Count Six – Negligent Supervision

51. Cimarron had a duty to Miramar to supervise its employees in a reasonable manner;

52. Cimmaron breached this duty by sending out an employee without adequate supervision;

53. Because of the lack of supervision the well blew out; and

ACE 00089

54. Said blowout caused Miramar to suffer damages.

## Attorney's Fees

55. Plaintiff is entitled to recover reasonable and necessary attorney fees under TEXAS CIVIL PRACTICE & REMEDIES CODE chapter 38 because this is a suit for breach of a contract.

## Exemplary Damages

56. Plaintiff is entitled to recover exemplary damages against Defendant Nicklos under Texas Civil Practice & Remedies Code § 41.003 due to Nicklos' fraud.

## Jury Demand

57. Plaintiff hereby demands a trial by jury and has tendered the appropriate fee.

ACE 00090

**Prayer**

WHEREFORE Plaintiff prays that this Honorable Court grant it the following relief from Defendants:

1. Actual Damages;

2. Damages for lost production;

3. Damages for injury to petroleum reservoir;

4. Exemplary Damages;

5. Economic Damages;

6. Plaintiff's reasonable and necessary attorney's fees;

7. Equitable relief;

8. Costs of the action; and

9. Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

William M. Clanton
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.
926 Chulie Dr.
San Antonio, Texas 78216
210 226 0800
210 338 8660 fax

ACE 00091

# CERTIFICATE OF SERVICE

On this 2 day of June 2014 a true and correct copy of the foregoing was served on the below listed parties by the method indicated.

Roy Barnes
Tucker, Barnes, Garcia, DE LA Garza, P.C.
JPMorgan Chase Building
712 Main St., Suite 1600
Houston, Texas 77002-3297
Via CMRRR# 7006 2150 0005 6653 6839

Amanda Speer
Dore Law Group, P.C.
1717 Park Row, Suite 160
Houston, Texas 77084
Via CMRRR# 7006 2150 0005 6653 6822

Clinton Echols
Rymer, Moore, Jackson, Echols, P.C.
2801 Post Oak Blvd., Suite 250
Houston, TX 77056
Via CMRRR# 7006 2150 0005 6653 6815

William M. Clanton

ACE 00092