IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

NICKLOS DRILLING COMPANY,  §
    Plaintiff,  §
   §
VS.  §  Civil Action No. 6:14-cv-21
   §
ACE AMERICAN INSURANCE  §
COMPANY,  §
    Defendant.  §

**DEFENDANT ACE AMERICAN INSURANCE COMPANY'S
RESPONSE TO PLAINTIFF NICKLOS DRILLING COMPANY'S
PARTIAL MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Respectfully submitted,

/s/ Alicia G. Curran
Alicia G. Curran, Attorney-in-Charge
State Bar Number 12587500
Southern District Bar Number 19226
acurran@cozen.com

Of Counsel:
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas 75201-7335
Telephone: (214) 462-3000
Facsimile: (214) 462-3299

DATED: September 2, 2014

ATTORNEYS FOR DEFENDANT
ACE AMERICAN INSURANCE
COMPANY

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENTS ...........................1

II.   OBJECTIONS ...............................................................................3

    A.    The Affidavit of Bill Brannon is Incompetent and
          Impermissible Summary Judgment Evidence. ......................................3

III.  ARGUMENT AND AUTHORITIES IN RESPONSE ...................................6

    A.    ACE Has No Duty to Defend Nicklos in the Underlying
          Lawsuit. .................................................................................6

          1.    Exclusion 2.j.(1) Precludes Coverage for Miramar's
               Alleged Damage to the Well and Mineral Reserves. ..................9

          2.    Exclusion 2.j.(5) and 2.j.(6) Preclude Coverage For
               Miramar's Claimed Damages. ....................................................15

          3.    The Professional Services Exclusion Bars Coverage for
               All Claims. .............................................................................22

          4.    The Energy Pollution Liability Extension Endorsement
               Precludes Coverage for Miramar's Alleged Damage. ..............25

    B.    ACE Did Not Violate the Texas Insurance Code. ...............................26

          1.    No Violation of Chapter 541.060, et seq. .................................26

          2.    No Violation of Chapter 542.051, et seq. .................................28

IV.   CONCLUSION..............................................................................29

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Admiral Ins. Co. v. Ford*,
607 F.3d 420 (5th Cir. 2010) ....................................................................23, 24

*Aetna Fire Underwriters Ins. Co. v. Southwestern Engineering Co.*
626 S.W.2d 99 (Tex. App.—Beaumont 1981, writ ref'd n.r.e.) ........................23

*Allstate Ins. Co. v. Bonner*,
51 S.W.3d 289 (Tex. 2001)................................................................................28

*Allstate Ins. Co. v. Disability Services of the Sw. Inc.*,
400 F.3d 260 (5th Cir. 2005) ...............................................................................6

*Aranda v. Ins. Co. of N. Am.*,
748 S.W.2d 210 (Tex. 1988) ..............................................................................27

*Atl. Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.*,
982 S.W.2d 472 (Tex. App.—Dallas 1998, pet. den.) ................................22, 24

*Brazos River Conservation & Reclamation Dist. v. Adkisson*,
173 S.W.2d 294 (Tex. Civ. App.—Eastland 1943, writ ref'd)..........................17

*Clarendon Am. Ins. Co. v. Bay, Inc.*,
10 F. Supp.2d 736 (S.D. Tex. 1998)..................................................................26

*D.R. Horton-Tex., Ltd. v. Market Int'l Ins. Co.*,
300 S.W.3d 740 (Tex. 2009) ...............................................................................6

*Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*,
281 Fed. Appx. 267 (5th Cir. 2008)...................................................................22

*Essex Ins. Co. v. Hines*,
358 Fed. Appx. 596 (5th Cir. Tex. 2010) ..........................................................17

*Fid. & Guar. Ins. Underwriters, Inc. v. McManus*,
633 S.W.2d 787 (Tex. 1982) ...............................................................................6

*Fuller v. State Farm Mut. Auto. Ins. Co.*,
971 F.Supp. 1098 (N.D. Tex. 1997)...................................................................27

*GCI GP, LLC v. Stewart Title Guar. Co.,*
   290 S.W.3d 287 (Tex. App.—Houston [1st Dist.] 2009, no pet.)......................17

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London,*
   327 S.W.3d 118 (Tex. 2010) ..........................................................................9, 13

*Glenn v. Shamburger,*
   240 S.W. 701 (Tex. Civ. App. 1922, writ ref'd) ...............................................17

*Gonzalez v. Atl. Cas. Ins. Co.,*
   542 F.Supp.2d 601 (W.D. Tex. 2008) ...............................................................11

*Gore Design Completions, LTD. v. Hartford Fire Ins. Co.,*
   538 F.3d 365 (5th Cir. 2008) .............................................................................17

*Gregg & Valby, L.L.P. v. Great Am. Ins. Co.,*
   316 F.Supp.2d 505 (S.D. Tex. 2004)..................................................................24

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,*
   197 S.W.3d 305 (Tex. 2006) ...........................................................................4, 8

*Heritage Res., Inc. v. NationsBank,*
   939 S.W.2d 118 (Tex. 1996) .............................................................................25

*Hodges v. Safeco Lloyds Ins. Co.,*
   2014 WL 1745894 ......................................................................................12, 22

*In re Hinsley,*
   201 F.3d 638 (5th Cir. 2000) ..........................................................................4, 8

*King v. Dallas Fire Ins. Co.,*
   85 S.W.3d 185(Tex. 2002)...................................................................................6

*Lamar Homes, Inc. v. Mid-Continent Gas. Co.,*
   242 S.W.3d 1 (Tex. 2007)..................................................................................28

*Lennar Corp. v. Great Am. Ins. Co.,*
   200 S.W.3d 651 (Tex. App.—Houston [14th Dist.] 2006, pet.
   denied)..............................................................................................................9, 13

*Marx v. Hartford Accident & Indem. Co.,*
   183 Neb. 12, 157 N.W.2d 870 (1968) ...............................................................24

*Mid-Continent Cas. Co. v. Bay Rock Operating Co.,*
   614 F.3d 105 (5th Cir.2010) .......................................................................passim

*Mid-Continent Cas. Co. v. JHP Development, Inc.*,
  557 F.3d 207 (5th Cir. 2009) ..............................................................................17

*Mid-Continent Cas. Co. v. Krolczyk*,
  408 S.W.3d 896 (Tex. App.—Houston [1st Dist.] 2013, pet. filed) .................20

*Nat'l Union Fire Ins. Co. of Pittsburgh Penn. v. Puget Plastics Corp.*,
  532 F.3d 398 (5th Cir. 2008) ................................................................................6

*Natural Gas Pipeline Co. of Am. v. Pool*,
  124 S.W.3d 188 (Tex. 2002) ................................................................................7

*Ohio Cas. Group of Ins. Companies v. Chavez*,
  942 S.W.2d 654 (Tex. App.—Houston [14th Dist.] 1997, writ
  denied)....................................................................................................................25

*Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*,
  279 S.W.3d 650 (Tex. 2009) .........................................................................5, 20

*Provident Am. Ins. Co. v. Castaneda*,
  988 S.W.2d 189 (Tex. 1998) ..............................................................................27

*Republic Ins. Co. v. Stoker*,
  903 S.W.2d 338 (Tex. 1995) .......................................................................27, 28

*State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc.*,
  121 Wash.App. 358, 88 P.3d 986 (2004) .............................................................9

*Tapatio Springs Builders v. Maryland Cas. Ins. Co.*,
  82 F.Supp.2d 633 (N.D. Tex. 1999) ...................................................................27

*Texas Co. v. Daugherty*,
  107 Tex. 226, 176 S.W. 717 (1915) ...............................................................8, 17

*Universe Life Ins. Co. v. Giles*,
  950 S.W.2d 48 (Tex. 1997)..................................................................................27

*Utica Natl. Ins. Co. of Texas v. Am. Indem. Co.*,
  141 S.W.3d 198 (Tex. 2004) ...............................................................................22

*Zaiontz v. Trinity Universal Ins. Co.*,
  87 S.W.3d 565 (Tex. App.—San Antonio 2002, pet. denied)............................26

*Zurich Am. Ins. Co. v. Nokia, Inc.*,
  268 S.W.3d 487 (Tex. 2008) ................................................................................6

**Statutes**

Tex. Ins. Code Chapter 541.060, ...............................................................26, 27, 28

Tex. Ins. Code 542.055 542.058(b) and 542.060. .................................................28

Tex.Ins. Code § 542.051 ..................................................................................28,  29

Texas Natural Resources Code § 89.002(2) ............................................................7

**DEFENDANT ACE AMERICAN INSURANCE COMPANY'S
RESPONSE TO PLAINTIFF'S PARTIAL MSJ
AND SUPPLEMENTATION OF ITS OWN MSJ
AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE GREGG COSTA:

COMES NOW, Defendant ACE AMERICAN INSURANCE COMPANY

("ACE"), and files this Response to Plaintiff's Partial Motion for Summary

Judgment, Supplementation of its own Motion for Summary Judgment, and Brief

in Support and respectfully shows as follows:

I.      **INTRODUCTION AND SUMMARY OF ARGUMENTS**

The present action arises out of an underlying lawsuit styled *Miramar*

*Petroleum, Inc. v. Nicklos Drilling Company, et al.,* Cause No. 12-6-14449 filed in

the 267th Judicial District Court for Jackson County, Texas ("Underlying Lawsuit")

[Docs 9-4, 9-5, 9-6].[1] ACE issued a Commercial General Liability Policy No.

PMGG2492578A002 to Miramar Petroleum, Inc. ("Miramar") as the named insured

for the periods of May 16, 2012 to May 16, 2013 (the "Policy").  [Doc. 9-1, (ACE

00001-00068)].

Nicklos filed this declaratory judgment and breach of contract action seeking

defense and indemnity in the Underlying Lawsuit.  Nicklos also alleges that ACE's

---

[1] These documents, attached as Exhibits 4, 5, and 6 to Pl.'s Mot. for Partial Summary Judgment,
are the Petitions filed by Miramar which include the factual allegations by Miramar against
Nicklos. The only difference between the first two petitions is the service address for co-
Defendant Cimarron Engineering, Inc. The Third Amended Petition adds to Miramar's basis for
its allegations against Nicklos , asserting a cause of action for fraud by non-disclosure that a
piece of equipment, a Koomey 5 station accumulator with remote panel, was no longer in good
repair.

failure to defend Nicklos in the Underlying Lawsuit constitutes a violation of the Texas Insurance Code. The parties have filed cross-motions for summary judgment.

For the purposes of this response, ACE does not dispute that Nicklos is an additional insured under the Policy or that the alleged blow out constitutes an "occurrence" or that Miramar's alleged damages because of its inability to access its reserves constitute "property damage." Instead, ACE demonstrates it has no duty to defend nor duty to indemnify Nicklos in the Underlying Lawsuit based on the following independent exclusions:

1. Exclusion 2.j.(1) of the Policy precludes coverage for the alleged damage to the well and mineral reserves because the well and the mineral reserves were owned, rented or occupied by Miramar, the named insured, pursuant to a mineral rights lease.

2. Exclusions 2.j.(5) and j.(6) of the Policy preclude coverage for the damages claimed by Miramar because Nicklos and the other defendants were performing work on behalf of Miramar and the property damaged was the subject of the work performed by Nicklos on behalf of Miramar.

3. The Designated Professional Services Exclusion precludes coverage for the alleged damage to the well and mineral reserves because the Policy does not apply to "property damage" due to the rendering of or failure to render any professional service.

4. The Energy Pollution Liability Extension Endorsement precludes coverage for Miramar's alleged damage to real or personal property owned by, leased to, or rented by Nicklos or otherwise in the care, custody, or control of Nicklos.

Because the answer to any one of issues 1, 2, 3, or 4 is "yes," judgment should be entered declaring that ACE owes no defense or indemnity to Nicklos.[2] Because Nicklos was granted summary judgment in its favor in the Underlying Lawsuit, judgment should be granted in ACE's favor that it has no future or on-going defense or indemnity obligation for Nicklos in the Underlying Lawsuit from June 16, 2014, the date of the summary judgment. Because ACE did not violate the Texas Insurance Code, judgment should be entered dismissing Nicklos' Texas Insurance Code causes of action.

## II. OBJECTIONS

### A. The Affidavit of Bill Brannon is Incompetent and Impermissible Summary Judgment Evidence.

Nicklos' Motion for Partial Summary Judgment includes evidence in the form of an affidavit executed by Bill Brannon as Exhibit 15. [Doc. 9-15]. The Brannon Affidavit should be struck since it is incompetent and/or impermissible summary judgment evidence.

A motion for summary judgment must be supported by competent evidence. Mere conclusory allegations are insufficient to support a motion for summary judgment. A party's self-serving statement in an affidavit is not competent summary judgment evidence, where the assertion is unsupported and the evidence

---

[2] Should ACE's Summary Judgment be denied and Nicklos' granted, ACE reserves the right to seek "other insurance" from Nicklos through the policies issued to Nicklos, including the Control of Well Control Insurance policy between Lloyds of London and Miramar, the Commercial General Liability policy between Nicklos and the First Liberty Insurance Corp., and the Commercial Umbrella Liability policy between Nicklos and Commerce and Industry Insurance Company.

in the record is to the contrary.[3] Brannon's Affidavit states, "[d]rilling oil and gas wells involves hard, physical labor.  Drilling oil and gas wells is not work that is primarily mental or intellectual."  [Doc. 9-15, paragraph 3].  Such statement is nothing more than a self-serving conclusion.  First, the statement is by the Operations Manager of Nicklos who has an interest in the outcome of any coverage determination and this Coverage Lawsuit.  Second, no facts are included describing the operations that Nicklos was conducting at the Miramar well site so that the information may be cross-examined or tested and as such is conclusory.  As such paragraph 3 of the Affidavit should be stricken.

Brannon's Affidavit should also be stricken as incompetent summary judgment evidence.  With few exceptions not relevant here, the only documents that may be considered for purposes of duty to defend are (a) the policy, and (b) the petition or complaint.[4]  In *GuideOne*, a parishioner sued the church for alleged sexual abuse and exploitation by an associate youth minister (Evans), alleging that Evans was "at all times from 1992 to 1994 ... employed … and under the church's direct supervision and control."  Through discovery it was learned that Evans ceased employment with the church prior to the inception of GuideOne's policy. GuideOne presented the contradictory employment information through an affidavit.  The Texas Supreme Court held that "a plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty

---

[3] *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000).

[4] *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305 (Tex. 2006).

to defend."[5]   Accordingly, the extrinsic evidence of employment records could not be considered, and the allegations in the plaintiff's petition triggered a duty to defend.[6]   Just as an insurer may not use extrinsic evidence to avoid a defense obligation, neither may an insured use extrinsic evidence to impose a defense obligation since an insurer's duty to defend does not extend to allegations, true or false, that have not been made.[7]   The facts included in Miramar's are that "Miramar and Nicklos entered into a valid, enforceable contract" and that "Nicklos had experienced well operators on site who should have recognized that the pressure in the well exceeded the weight of mud."  [Doc 9-5, at ¶¶ 24-25 and 17]. Brannon's opinions as to the effect of the contract and the scope of Nicklos's work contained in his Affidavit are nothing more than extrinsic evidence and this Court should decline the invitation to consider them.

ACE therefore objects to the Brannon Affidavit and requests that it be struck.  In the strict alternative, ACE objects to the last two sentences of paragraph 2 and all of paragraph 3 and requests that those portions of the Affidavit be struck.

---

[5] *Id.*

[6] *Id.*

[7] *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009).

### III.    ARGUMENT AND AUTHORITIES IN RESPONSE

**A.    ACE Has No Duty to Defend Nicklos in the Underlying Lawsuit.**

An insured seeking coverage has the initial burden to plead and prove the benefits sought are covered by the insurance policy at issue.[8]  The duty to defend is distinct from the duty to indemnify.[9]  The duty to defend is determined based on the "four corners" of the facts alleged in the underlying lawsuit and the "four corners" of the policy at issue.[10]  The allegations in the pleadings are taken at face value without regard to facts ascertained before suit or those developed during the course of litigation.[11]  Accordingly, an insurer is not legally required to defend a suit against an insured if pleadings in the underlying lawsuit allege facts not within the scope of coverage.[12]

Miramar alleges it hired Nicklos to drill the well and have "experienced well operators on site who should have recognized that the pressure in the well exceeded the weight of the mud."  Miramar contends Nicklos and the other defendants "should have recognized that the well was on the verge of blowing out and that the mud weight was insufficient."  Miramar claims the blowout damaged

---

[8] *Nat'l Union Fire Ins. Co. of Pittsburgh Penn. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008).

[9] *D.R. Horton-Tex., Ltd. v. Market Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

[10] *Allstate Ins. Co. v. Disability Services of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005) (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)).

[11] *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)

[12] *See Allstate Ins. Co.*, 400 F.3d at 265; *see also Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982) ("If the petition only alleges facts excluded by the policy, the insurer is not required to defend.").

the well "to the extent that access to valuable petroleum reserves is obstructed" and "[d]ue to the equipment, drill, pipe, and tools that were broken in the well, the only way to access these reserves is to drill another well near the location of the Sartwelle #1."  Miramar seeks to recover for the damage to the well and its alleged inability to obtain access to the mineral reserves.  All of the pleadings filed in the Underlying Lawsuit only allege facts excluded by the ACE Policy; therefore, ACE has no duty to defend Nicklos in the Underlying Lawsuit.

The ACE Policy defines "you" or "your" to be the named insured.  [Doc. 9-1, (ACE 0006)].  The Policy identifies Miramar as the named insured.  Thus, when the Policy refers to "you" or "your" it is referring to Miramar.

Miramar's petitions allege that it is an independent oil and gas exploration and production company.  It further alleges that it "leased the mineral rights" from Mr. Sartwelle [Doc. 9-3, at ¶7; 9-4, 9-5, 9-6, at ¶8], and is the operator of the well [Doc. 9-6 at ¶9].[13]  In Texas, an oil and gas lease grants a fee simple determinable interest to the lessee whereby the lessee acquires ownership of all the minerals in place that the lessor owned.[14]  When an oil and gas lease reserves only a royalty interest, the lessee acquires title to all of the oil and gas in place.[15]  Oil and gas reserves are real property and do not become personal property until they are

---

[13] "Operator" means a person who assumes responsibility for the physical operation and control of a well.  Section 89.002(2), Texas Natural Resources Code.

[14] *See Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2002).

[15] *Id.*

severed from the soil.[16]  Therefore, Miramar owned the Sartwelle #1 well and its reserves.

Miramar blames Nicklos for a well blowout and seeks damages to the well "to the extent that access to valuable petroleum reserves is obstructed."  Miramar further states that "the only way to access these reserves is to drill another well near the location of Sartwelle well #1."  Specifically, Miramar seeks: "1. Actual damages; 2. Damages for Lost Production; 3. Damages for injury to petroleum reservoir . . . [and] 5. Economic Damages[.]"  [Docs. 9-3, 4, 5, and 6].  Miramar does not allege that it seeks to recover for "equipment[17] lost in the well," as alleged by Nicklos. [Doc. 9 at p.11 and p.15]. Instead, Miramar asserts it is entitled to damages for the damage to its well and its alleged inability to obtain access to the mineral reserves.

The ACE Policy defines "property damage" to include "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured."  Applying the Policy's

---

[16] *Texas Co. v. Daugherty*, 107 Tex. 226, 233, 176 S.W. 717, 718 (1915)

[17] The "insured contract" definition was modified by the Oil and Gas Industry Endorsement, effective May 16, 2012, which added the following language to Section V – Definitions 9.:

> Definition 9. "Insured contract does not include that part of any contract or agreement that indemnifies any person or organization for injury or damage: ***
>
> b.       To tools, equipment or materials while performing operation for you.

Therefore, an "insured contract" would not include a contractual agreement by Miramar to indemnify Nicklos for injury or damage to tools, equipment or materials while performing operations for Miramar.

grant of coverage, ACE will pay those sums of money that the insured becomes legally obligated to pay as damages because of "property damage" to which this insurance applies. [Doc. 9-1, (ACE 00006)].[18]  But the Policy specifically states that it does not apply to certain facts or alleged facts.  As explained below, it is these Policy exclusions that preclude ACE from having any defense or indemnity obligation to Nicklos.

### 1. Exclusion 2.j.(1) Precludes Coverage for Miramar's Alleged Damage to the Well and Mineral Reserves.

Exclusion 2.j.(1) of the ACE Policy, otherwise known as the "owned property exclusion," is one of the Policy exclusions that preclude coverage.  [Doc. 9-1, (ACE 00009)].  The underlying premise of the owned property exclusion in a CGL policy is to prevent the CGL policy from providing first-party benefits to the insured.[19]  Simply, a general liability policy is not intended to function as commercial property insurance.

Exclusion 2.j.(1) provides that the Policy does not apply to property owned, rented, or occupied by Miramar.  More specifically, the Policy states:

**2**.    **Exclusions**

This insurance does not apply to: ...

---

[18] Section I – Coverages, Coverage A Bodily Injury And Property Damage Liability, 1. Insuring Agreement, paragraph a.

[19] *Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 692 (Tex. App.—Houston [14th Dist.] 2006, pet. denied), *abrogated on other ground by Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) (citing *State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc.*, 121 Wash.App. 358, 88 P.3d 986, 992 (2004) (stating "owned property" exclusion prevents a liability policy from providing first-party benefits to the insured)).

j.     **Damage to Property**

"Property damage" to:

**(1)**    Property you own, rent, or occupy, including
any costs or expenses incurred by you, or any
other person, organization or entity, for repair,
replacement, enhancement, restoration or
maintenance of such property for any reason,
including prevention of injury to a person or
damage to another's property[.]

The "you" in the first line of the exclusion is Miramar.[20]  Therefore, the "property"

referred to in 2.j.(1) is the Sartwelle well #1 and the reserves the subject of the

mineral lease.  Applying the alleged facts in Miramar's petition, exclusion 2.j.(1)

precludes "property damage" to a well or reserves <u>owned by Miramar</u> or coverage

for any costs or expenses incurred by Miramar or any other entity [in this case

Miramar is demanding payment from Nicklos] for repair, replacement or

restoration of any damage to the well or the reserves <u>owned by Miramar</u> for any

---

[20] Nicklos argues that the "you" means Nicklos.  The Policy provides otherwise.  On page 1 of
the Commercial General Liability Coverage Form (ACE 00060 the Policy provides "Through
this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and
any other person or organization qualifying as a Named Insured under this policy. … The word
'insured' means any person or organization qualifying as such under Section II – Who is An
Insured."   Nicklos is an additional insured pursuant to the Additional Insured – Designated
Person or Organization Endorsement.  (ACE 00025).  This Endorsement amends Section II –
Who Is An Insured to include as an additional insured "any person or organization whom you
[Miramar] have agreed to include as an additional insured under a written contract or agreement,
provided such contract was executed prior to the date of loss, but only with respect to liability for
"property damage" caused, in whole or in part, by your [Miramar's] acts or omission or the acts
or omissions of those acting on your [Miramar's] behalf: A. in the performance of your
[Miramar's] ongoing operations; or B. in connection with your [Miramar's] premises owned by
or rented to you [Miramar].  Applying the definitions on page 1 of the Policy along with the
Additional Insured Endorsement, Nicklos is "an insured" and not a "Named Insured." Therefore,
Nicklos does not qualify as "you" or "your" in any of the Policy language.

reason, including damage to another's property.[21]   Therefore, because Miramar seeks damages against Nicklos for Miramar's own property, exclusion 2.j.(1) bars coverage.

Nicklos argues that *Bay Rock*[22] applies to exclusion 2.j.(1) just as the Fifth Circuit applied it to exclusion 2.j.(5). [Doc. 9 at p. 17].  The Fifth Circuit did not analyze the effect of exclusion 2.j.(1).  The basis for the Fifth Circuit's holding that 2.j.(5) was superseded by Mid-Continent's Oil & Gas Endorsement was that enforcement of exclusion 2.j.(5) (and secondarily, 2.j.(6)) would cause an irreconcilable conflict between the exclusion and the "additional coverage" purchased by Bay Rock.  But in the instant case, there is no such "additional coverage" or irreconcilable conflict.

In *Bay Rock*, the Fifth Circuit stated that exclusion 2.j.(5) did not apply to the Bay Rock loss was because its application "would eliminate the additional coverage that Bay Rock purchased with the [Mid-Continent] Oil & Gas Endorsement."[23]  But the HOC claim against Bay Rock and the Miramar claim against Nicklos, as well as the coverage afforded to Bay Rock as opposed to Nicklos by and through Miramar's Policy with ACE are different making *Bay Rock* inapplicable to the instant Coverage Lawsuit.

---

[21] *Gonzalez v. Atl. Cas. Ins. Co.*, 542 F.Supp.2d 601, 604 (W.D. Tex. 2008) (holding this exclusion precluded coverage for damage to the property the named insured leased).

[22] *See Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 115-16 (5th Cir.2010).

[23] *Id.* at 115.

First, the ACE Underground Resources and Equipment Coverage Endorsement that does not provide a grant of additional coverage to Miramar or Nicklos. The grant of coverage for the Policy is only set forth in Section I, Coverage A of the Commercial General Liability Coverage Form. [Doc. 9-1, (ACE 00006)]. That grant of coverage is for "damages because of … 'property damage' to which this insurance applies." The term "property damage," *i.e.* physical injury to tangible property … or loss of use of tangible property that is not physically injured, is not changed by the Underground Resources and Equipment Coverage Endorsement.

Second, what the Endorsement does is replace exclusion 2.j.(4) of the Policy with a new exclusion 2.j.(4). The new exclusion 2.j.(4), still excludes "property damage" to personal property in the care, custody or control of the insured,[24] but then ACE agrees that it will not apply the exclusion for personal property when the "property damage" is to personal property included within the "underground resources hazard" or the "underground equipment hazard." The Endorsement adds definitions to the Policy's Definitions Section for "underground resources hazard" and "underground equipment hazard." The definitions provide that the underground resources hazard includes "property damage" to mineral substances

---

[24] Texas courts have held where the reference is to "the insured" the separation of insureds provision of the policy causes "the insured" to mean the entity against whom the claim for coverage is made. *Hodges v. Safeco Lloyds Ins. Co.*, 2014 WL 1745894 *3. In the case of exclusion 2.j.(4) that references "the insured", that would be Nicklos. However, where "you" is a defined term, the definition provided in the policy still applies. *Id.* at *5.

which have not been reduced to physical possession above the surface of the earth and any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on.  The definitions further provide that the underground equipment hazard includes "property damage" to any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole.

Notably, the "give back" contained in new exclusion 2.j.(4) for personal property coverage specifically does not apply to "'property damage' to that particular part of any real property on which operations are being performed by you or on your behalf if the 'property damage' arises out of those operations." This exception to the "give back" is the same as the ACE Policy's exclusion 2.j.(5).   Therefore, contrary to Nicklos's argument to the contrary, the ACE Endorsement cannot be likened to the Mid-Continent Endorsement.  Nor does the *Bay Rock* holding apply since ACE and Miramar specifically agreed through the ACE Endorsement that the "property damage" to which the underground resources hazard and underground equipment hazard applies was limited to personal property and did not include "property damage" to that particular part of any real property on which Miramar or anyone on behalf of Miramar was performing operations.

Third, the only other provision in the Endorsement is Paragraph I. Paragraph I of the Endorsement modifies the Policy's Limits of Insurance section contained at Section III of the Policy.   The Limits of Insurance is modified such

that ACE agrees that the most it will pay for damages because of all "property damage" included in the "underground resources hazard" or the "underground equipment hazard" is $1,000,000 for any one well, the aggregate limit shown on page 1 of the Endorsement.  This limit is different than the general aggregate limit of insurance for other damages covered by the Policy, which general aggregate limit is $2,000,000.

Fourth, applying the 2.j. exclusions to Miramar, unlike those applied to Bay Rock, does not serve to eliminate all coverage to all of Miramar's operations, Miramar, as an independent oil and gas exploration and production company does more than just drilling – according to the *Bay Rock* opinion, Bay Rock's sole operation.  The 2.j. exclusions, as for Miramar, would not serve to eliminate all coverage for "property damage" to all of the operations conducted by Miramar.

And finally, the named insured in *Bay Rock* was Bay Rock and Bay Rock purchased its own policy – it was not an additional insured under the policy purchased by the working interest owners or the well operator.  The Fifth Circuit held that the insurance that Bay Rock purchased was insurance for damage to other's property that Bay Rock was drilling.[25]  In the instant case, Miramar (not Nicklos) purchased the coverage for its operations.  Therefore the fact that Nicklos may not be covered for its operations is of no moment.

Applying exclusion to j.2.(1) the instant case results in no coverage for

---

[25] *Bay Rock Operating Co.*, 614 F.3d at 115.

Nicklos. There is nothing in the Policy that indicates that ACE agreed to insure Miramar for the wells or reserves it owned or the equipment used in maintaining or drilling the wells it owned.   In fact, the Policy provides just the opposite. Exclusion 2.j.(1) specifically provides that the property owned by Miramar or used with regard to the property owned by Miramar is excluded from coverage. Unlike the application of 2.j.(5) as to Bay Rock, the application of exclusion 2.j.(1) as to Miramar does not serve to eliminate all coverage.   Miramar still has coverage for all of its operations, just not for those wells that Miramar owns.

Accordingly, exclusion 2.j.(1) precludes coverage for any defense or indemnity obligation to Nicklos since the property the subject of the claim, *e.g.* the well and the reserves, is owned and occupied by Miramar.

**2.      Exclusion 2.j.(5) and 2.j.(6) Preclude Coverage For Miramar's Claimed Damages.**

Miramar initially alleged that it hired Nicklos to drill the well and has recently amended it allegations to include that is hired Nicklos to also provide a rig, and crew. [Docs. 9-3 through 9-6]. It hired American Petroleum Drilling Fluids, Inc. d/b/a American Drilling Fluids, Inc. ("ADF") "to manage the mud and other drilling fluids required for the well." *Id.* Miramar also alleges it hired Cimarron Engineering, LLC f/k/a Cimarron Engineering Corp. ("Cimarron") to "supervise and direct operations at the well site." [Docs. 9-5 and 9-6].   Miramar claims "Nicklos, ADF and Cimarron should have recognized that the well was on the verge of blowing out and that mud weight was insufficient." *Id.*  As to Nicklos,

Miramar alleges "Nicklos had experienced well operators on site who should have recognized that the pressure in the well exceeded the weight of the mud" and "that the mud weight was insufficient." *Id*. Miramar claims that "one or more of the defendants caused or contributed to the blowout" and that Nicklos contractually "agreed to use reasonable means to prevent and control blowouts." *Id*.

Given these facts, exclusions 2.j.(5) and 2.j.(6) are other Property Damage exclusions that preclude coverage. *See* [Doc. 9-1, (ACE 00009-10)]. More specifically, exclusion 2.j.(5) and (6) provide:

> **2.** **Exclusions**
>
> This insurance does not apply to: …
>
> j.    **Damage to Property**
>
> "Property damage" to: …
>
> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

The Policy provides that "your work":

> a.    means
>
> **(1)** Work or operations performed by you or on your behalf; and
>
> **(2)** Materials, parts or equipment furnished in connection with such work or operations.
>
> b.    Includes:

**(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)**   The providing of or failure to provide warnings or instructions.

The term "that particular part" has been interpreted by the Fifth Circuit applying Texas law to preclude coverage for the damage to property which is the subject of the work performed by the Named Insured [you] or on its behalf.[26]

a)      Exclusion 2.j.(5).

As previously discussed, under Texas law, real property includes not only the land itself, but all buildings, improvements or other fixtures of any kind as well as minerals.[27] Items that have become affixed to the land, such as improvements, are deemed fixtures.[28] Under well settled Texas law, wells, derricks, engines, and other machinery and appliances placed on or in the land for developing and operating the land for oil and gas production are trade fixtures.[29] A fixture retains its character as real property notwithstanding its detachment or partial destruction.[30]

---

[26] *Essex Ins. Co. v. Hines*, 358 Fed. Appx. 596 (5th Cir. Tex. 2010); *Mid-Continent Cas. Co. v. JHP Development, Inc.*, 557 F.3d 207, 214 (5th Cir. 2009); *Gore Design Completions, LTD. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 371 (5th Cir. 2008).

[27] *See Texas Co. v. Daugherty,* 107 Tex. 226, 234, 176 S.W. 717, 719 (1915).

[28] *GCI GP, LLC v. Stewart Title Guar. Co.*, 290 S.W.3d 287, 295 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

[29] *Brazos River Conservation & Reclamation Dist. v. Adkisson*, 173 S.W.2d 294, 298 (Tex. Civ. App.—Eastland 1943, writ ref'd) (quoting SUMMERS ON OIL & GAS, Perm. Ed., Vol. 3, p. 214 § 526).

[30] *Glenn v. Shamburger*, 240 S.W. 701, 702 (Tex. Civ. App. 1922, writ ref'd).

Nicklos, and the other defendants, were contracted to perform oil and gas operations on behalf of Miramar, the Named Insured on the Sartwelle #1 well. Nicklos was specifically contracted to "drill the well" and according to Miramar's petition, contractually agreed to "use reasonable means to prevent and control blowouts." [Doc. 9-5]. The particular part of real property on which Nicklos, as Miramar's contractor or subcontractor, was working was the Sartwelle #1 well. In its Third Amended Petition, Miramar alleged that Nicklos was responsible not only for the drilling but also the rig and the crew and that the condition of Nicklos' rig equipment, at least in part, was responsible for the blow out. Miramar alleges that:

> "At about 8,630 feet, pressure from the well overpowers the weight of the mud and the crew loses control of the rig. The driller attempts to close the blow out preventers. Rig equipment that is not in good condition keeps the well from being closed quickly. The blow out damages the well to the extent that valuable petroleum reserves is obstructed."

[Doc. 9-6 at ¶¶ 19 and 20]. Based on Miramar's allegations against Nicklos, the "property damage," *i.e.* the loss of the well and access to the reserves, arose out of Miramar's operations or work performed on behalf of Miramar by Nicklos and Nicklos's failure to recognize that the mud weight on the well was insufficient resulting in a blowout.

Because the particular part on which Nicklos was working, *e.g.* the well, on behalf of Miramar, resulted in the damages Miramar seeks, loss of use of the well and inability to access the reserves, exclusion 2.j.(5) serves to exclude coverage as to Nicklos.

Nicklos argues that the *Bay Rock* opinion serves to eliminate ACE's reliance on exclusion 2.j.(5).  For the same reasons that the *Bay Rock* analysis does not apply to exclusion 2.j.(1), it does not apply to 2.j.(5).

Consequently, exclusion 2.j.(5) serves to eliminate any duty by ACE to defend or indemnify Nicklos.  This is because Miramar's claim against Nicklos is for "property damage" to that particular part of real property (well and reserves) on which Miramar or contractors working on Miramar's behalf were performing operations, and the "property damage" arose out of those operations.

> b)      Exclusion 2.j.(6)

Miramar also has no duty to defend Nicklos in the Underlying Lawsuit because coverage is barred under Exclusion 2.j.(6). Nicklos argues that this exclusion is inapplicable because it only precludes coverage for repairing or replacing Nicklos' defective work and does not exclude damage for its non-defective work or damage to other property resulting from the defective work. [Doc. 9 at ¶E].  Exclusion 2.j.(6) precludes coverage for "property damage" (loss of the well and loss of use of the petroleum reserves) to that particular part of the property (the well) that must be restored, repaired or replaced because Nicklos' work on behalf of Miramar was incorrectly performed on the well. Because of Nicklos' drilling work done on the well, Miramar had to replace the well with another well in order to access the well reserves.

Like Exclusion 2.j.(5), Exclusion 2.j.(6) also encompasses the "that particular part" language. The phrase "that particular part" as applied to Exclusion 2.j.(6) has been interpreted to limit the exclusion to the subject of the defective workmanship.[31] Here, the subject of the defective workmanship is the well itself, and the loss of the well and the obstruction of the petroleum reserves is directly related to Nicklos' failure to realize the mud weight was insufficient and "prevent and control blowouts."

Nicklos again relies solely on *Bay Rock* to argue that Exclusion 2.j.(6) does not preclude coverage.  However, *Bay Rock* is distinguishable from the Policy and the facts at issue in this Underlying Lawsuit.  In *Bay Rock*, the property that was the subject of Bay Rock's defective work was the intermediate casing seat and the surrounding formation.[32]  The Fifth Circuit held that exclusion 2.j.(6) only applied to the property damage to that intermediate casing seat and the surrounding formation.  Mid-Continent did not point to any evidence that any of the costs awarded HOC were specifically for property damage to the intermediate casing seat or the surrounding formation.  Consequently, the Court held that exclusion 2.j.(6) did not apply to any of the damages at issue.  As a secondary reason for finding 2.j.(6) inapplicable, the Court again relied upon its analysis of an

---

[31] *Pine Oak Builders, Inc.*, 279 S.W.3d at 654-55; *Mid-Continent Cas. Co. v. Krolczyk*, 408 S.W.3d 896, 902 (Tex. App.—Houston [1st Dist.] 2013, pet. filed).

[32] *Bay Rock Operating, Co.*, 614 F.3d at 115.

"irreconcilable conflict between the exclusion and the additional coverage purchased by Bay Rock."

In the instant case, as demonstrated above, there is no additional coverage grant or "irreconcilable difference" between the Policy and the Underground Resources and Equipment Coverage Endorsement; therefore, the Fifth Circuit's secondary reason in *Bay Rock* does not apply to the instant case.

Applying the terms of exclusion 2.j.(6), the Policy does not apply to "property damage" to that particular part of any property that must be restored, repaired or replaced, i.e. the well, because the work or operations performed by Miramar or on Miramar's behalf and the materials, parts or equipment furnished in connection with such work or operations was incorrectly performed on the well. The work performed by Miramar or on Miramar's behalf that was incorrectly performed was to the well. The subject of the defective work that was done on Miramar's behalf involved the drilling of the well including the failure by others on Miramar's behalf, including Nicklos, to recognize that the mud levels were inadequate (and, as of the Third Amended Petition, the poor condition of the Nicklos rig). The property damage asserted by Miramar is that the original well had to be replaced by another well in order to have access to the reserves. Miramar has not alleged resulting damage to any other property other than property involved with Miramar's work. Therefore, exclusion 2.j.(6) excludes coverage, and ACE owes no duty to defend Nicklos in the Underlying Lawsuit.

### 3.     The Professional Services Exclusion Bars Coverage for All Claims.

The Designated Professional Services Exclusion provides that "this insurance does not apply to … 'property damage' … due to the rendering of or failure to render any professional service." [Doc. 9-1, (ACE 00026)].  It describes "professional services" barred by its terms as:

> 1.     The preparing, approving, or failure to prepare or approve maps, shop drawings, opinion[s], reports, surveys, field orders, change orders, or drawing and specifications and supervisory, inspection, architectural or engineering activities.
>
> 2.     Any other professional services provided by the insure[d]

Accordingly, any "property damage" due to the rendering or failure to render any "professional service" by the insured [Nicklos] is barred from coverage.[33]   For the purposes of this Policy, "professional services" not only includes supervisory, inspection, or engineering activities, but also "any other professional services."  Texas courts construe the term "professional services" to mean requiring a professional to perform an act particular to that individual's specialized vocation using his or her specialized knowledge or training.[34]

Miramar plead that Nicklos was hired to drill a well and "had experienced well operators on site who should have recognized that the pressure in the well

---

[33] "The insured" in this provision means the entity against whom the claim for coverage is made, *i.e.* Nicklos.  *Hodges v. Safeco Lloyds Ins. Co.*, 2014 WL 1745894 *3.

[34]   *Atl. Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476-477 (Tex. App.—Dallas 1998, pet. den.); *see also Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 Fed. Appx. 267, 271 (5th Cir. 2008); *Utica Natl. Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d 198, 200 (Tex. 2004).

exceeded the weight of the mud" and report this fact.  Miramar's Petition against Nicklos alleges nothing more than Nicklos failed to act upon its specialized knowledge about the effect of mud and pressure in a well.  Ensuring a well does not blow out during drilling operations has been held to require specialized knowledge and training sufficient to trigger the enforcement of the professional services exclusion and bar coverage.[35]

Nicklos' argument that drilling does not require "work involving mental or intellectual rather than physical labor" is self-serving and unsupported by Miramar's allegations against it in the Underlying Lawsuit.  Looking to the specific allegations, Miramar alleges, "Nicklos had experienced well operators on site who should have recognized that the pressure in the well exceeded the weight of the mud." [Doc. 9-5  at ¶17].  This allegation alone provides that Nicklos had to use its requisite specialized knowledge and training to monitor pressure in the well as well as the required mud weight. Moreover, this allegation factually asserts that Nicklos had the requisite experience and knowledge but failed to supervise or inspect the pressure to weight of mud ratio required to prevent a blowout. Nicklos' reliance on *Aetna Fire Underwriters Ins. Co. v. Southwestern Engineering Co.* is misplaced.[36]  In *Southwestern Engineering*, the court held that the professional services exclusion did not apply to bar coverage for an engineering firm whose contract with the insured was to provide engineering services, but the property

---

[35] *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 426 (5th Cir. 2010).

[36] 626 S.W.2d 99 (Tex. App.—Beaumont 1981, writ ref'd n.r.e.).

damage at issue was caused by locating underground pipelines, an activity that did not require specialized engineering knowledge.[37]   Here, Miramar alleges that the loss of its well and reserves arose out of the very knowledge and services Miramar hired Nicklos to use, *e.g.* keeping the well under control while accessing reserves.

"To qualify as a professional service, the task performed must arise out of acts particular to the individual's specialized vocation."[38]   In determining whether a particular act is a "professional service," the focus is on the act itself, and not the title or character of the person performing it.[39]   In drilling the well, Miramar alleges Nicklos was tasked with more than physically drilling the hole.   Nicklos also had to monitor the pressure inside the well as well as well as the mud weight in order to "prevent and control blowouts".   *See* [Doc. 9-6].   It was Nicklos' failure to "recognize[] that the pressure in the well exceeded the weight of the mud" that caused the blowout.   The Miramar allegations thus fall within *Admiral Ins. Co. v. Ford*.[40]   Accordingly, because the damages sought by Miramar are allegedly due to Nicklos's failure to render proper professional services, the Designated Professional Services exclusion serves to preclude coverage and ACE has no duty to defend or indemnify Nicklos.

---

[37] *Id.* at 101.

[38] *Susman Godfrey, L.L.P.*, 982 S.W.2d at 477-78.

[39] *Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*, 316 F. Supp.2d 505, 513 (S.D. Tex. 2004) (quoting *Marx v. Hartford Accident & Indem. Co.*, 183 Neb. 12, 157 N.W.2d 870, 871–72 (1968)).

[40] *See supra* note 35.

### 4.    The Energy Pollution Liability Extension Endorsement Precludes Coverage for Miramar's Alleged Damage.

The Ace Policy contains an Energy Pollution Liability Extension Endorsement, which outlines the coverage for pollution liability. [Doc 9-1, (ACE 00034-00040)]. Section III. C. of the endorsement under the section titled, Pollution Liability That Is Never Covered, reads:

> Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of (1) cause of the discharge of "pollutants", or (2) whether the discharge otherwise might satisfy the conditions of section III.A. and III.B., above, this insurance does not apply to any injury, damage, expense, costs, "loss", seepage, migration, release or escape of "pollutants" at, from, related to any:  ...
>
> 5.    Damage to real or personal property owned by, leased to, or rented by the "insured", or otherwise in the care, custody, or control of the "insured". This exclusion 5. does not apply to "remediation costs".

*Id.* at ACE 00036.  In the Petition, Miramar alleges, "[a]t about 8630 feet pressure from the well overpowers the weight of the mud and the well blows out." [Doc 9-5].  Miramar further alleges, "one or more of the defendants caused or contributed to the blowout." *Id.*  Blowout is not defined in the Policy.

When a term is not specifically defined by an insurance policy it is given its plain, ordinary and/or generally accepted meaning.[41]  Texas courts normally refer to external references such as dictionaries to determine the policy's plain, ordinary and/or generally accepted meaning.[42]  The term "blowout" as defined in the oil and gas industry is "[a]n uncontrolled flow of reservoir fluids into the wellbore, and

---

[41] *Ohio Cas. Group of Ins. Companies v. Chavez*, 942 S.W.2d 654, 659 (Tex. App.—Houston [14th Dist.] 1997, writ denied).

[42] *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (looking to an oil and gas industry reference to determine the industry defined meaning of "royalty").

sometimes catastrophically to the surface."[43]   Merriam Webster Dictionary defines

"blowout" as "an uncontrolled eruption of an oil or gas well."[44] Because Miramar

alleges its damages arise from the blowout,[45] and include loss of the well and the

mineral reserves, Section III.C of the Energy Pollution Liability Extension

Endorsement bars coverage. Accordingly, ACE has no duty to defend Nicklos in

the Underling Lawsuit.

**B.     ACE Did Not Violate the Texas Insurance Code**

   **1.     No Violation of Chapter 541.060, *et seq.***

In order for Nicklos to prevail on its cause of action that ACE violated the

Texas Unfair Claims Settlement Practices Act (Chapter 541.060, TEXAS

INSURANCE CODE), Nicklos must demonstrate that ACE engaged in any one or

more of the enumerated unfair settlement practices with respect to its claim and

that:

   a.     the insurer's liability to pay or defend under the policy was
          reasonably clear; and

   b.     a reasonable insurance company, having conducted an
          investigation of the claim, would have known that its liability

---

[43] Schulemberger Oil Field Glossary,
http://www.glossary.oilfield.slb.com/en/Terms/b/blowout.aspx (last visited Aug. 29, 2014).

[44] Merriam-Webster.com. Merriam-Webster, n.d. Web.
http://www.merriam-webster.com/dictionary/blowout (last visited Aug. 29, 2014).

[45] A blowout inherently involves the discharge  of  a pollutant as defined by the Policy. See
Section V – Definitions 15. [Doc 9-1] (ACE 00020).   According to Texas law the terms
"discharge" and dispersal as used in a pollution exclusion are not terms of art and open to broad
interpretation.  *See Clarendon Am. Ins. Co. v. Bay, Inc.*, 10 F.Supp.2d 736, 743 (S.D. Tex. 1998);
*Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573 (Tex. App.—San Antonio 2002, pet.
denied).

was reasonably clear and there was no basis to deny or delay the claim.[46]

Texas courts apply an objective standard to determine whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits.[47]  There can be no claim for bad faith when an insurer has denied a claim that is in fact not covered.[48]  Equally important, a bona fide coverage dispute does not support an award of damages under Chapter 541.060.[49]  Evidence the insured disagreed with the insurer's interpretation of coverage "is not evidence that liability under the policy had become reasonably clear" and there was no basis to deny or delay the claim.[50]

Nicklos asserts that ACE failed to accept or reject its tender or issue a coverage position letter timely is a violation of Texas' unfair settlement practices. First, Nicklos alleges no facts that demonstrate why or how ACE's alleged acts, even if taken as true, satisfy *Giles*.  Second, under the interpretive cases, none of the petitions in the Underlying Lawsuit invoke a defense (and the Third Amended Petition was not tendered to ACE for a defense).  Even if any of the petitions alleged facts that required ACE to defend Nicklos, which none do, the parties

---

[46] *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997).

[47] *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988).

[48]  *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *see also Tapatio Springs Builders v. Maryland Cas. Ins. Co.*, 82 F.Supp.2d 633, 647 (N.D. Tex. 1999); *Fuller v. State Farm Mut. Auto. Ins. Co.*, 971 F.Supp. 1098, 1101 (N.D. Tex. 1997).

[49] *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 193 (Tex. 1998).

[50] *Id.*

disagreement regarding a defense obligation, as ACE's motion for summary judgment and this Response demonstrates, is one that involves a *bona fide* dispute and does not rise to the level of demonstrating that ACE's liability was reasonably clear much less that there was no basis to deny or delay the claim.  Given these principles, ACE's denial of a defense was, at minimum, reasonable under Texas law for which there is no violation or damages under Chapter 541.060.[51]

### 2.    No Violation of Chapter 542.051, *et seq.*

Texas Insurance Code § 542.051, Subchapter B sets forth deadlines by which an insurance company must respond to a claim.  A "claim" is defined as "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary."[52]  The Texas Supreme Court has construed Chapter 542.051 liberally to apply to a wrongful refusal to defend, holding that Chapter 542.051 applies to a liability insurer's failure to pay defense costs when owed under the policy.[53]

---

[51] *Stoker*, 903 S.W.2d at 341.

[52] § 542.051. The Prompt Payment of Claims Act is only enforceable if the insurer is liable under the insurance policy.  §§ 542.058(b) and 542.060, TEX. INS. CODE.  Only then does the Act mandate that (1) if a claim is made pursuant to an insurance policy, (2) the insurer is liable under the policy, and (3) the insurer is not in compliance with the timing requirements of Act, the insurer shall be liable to pay the claimant or beneficiary, in addition to the amount of the claim, 18% per annum of the amount of the claim as damages, together with reasonable attorney's fees. Tex. Ins.  Code 542.055 *et seq.*; *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001). Chapter 542.051 does not apply to defense costs incurred by an insurance company for its insured.

[53] *Lamar Homes, Inc. v. Mid-Continent Gas. Co.,* 242 S.W.3d 1, 19-20 (Tex. 2007).

Because ACE did not and does not owe a defense to Nicklos against any of the petitions filed in the Underlying Lawsuit, ACE owes no damages under Texas Insurance Code § 542.051.

## IV.   CONCLUSION

ACE American Insurance Company therefore prays that Plaintiff's Motion for Partial Summary Judgment be denied.  Further, since Nicklos was granted its summary judgment in the Underlying Lawsuit, there can be no duty to indemnify Nicklos and ACE prays for judgment in its favor that ACE has no duty to indemnify Nicklos.  ACE further requests a judgment in its favor that Nicklos' take nothing for its cause of action for breach of contract, violations of the Texas Insurance Code, and damages and attorneys' fees therefrom.  ACE further requests all other relief to which it may be entitled, at law or in equity.

Respectfully submitted,

 /s/ Alicia G. Curran
Alicia G. Curran, Attorney-in-Charge
State Bar Number 12587500
Southern District Bar Number 19226
acurran@cozen.com

Of Counsel:
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas 75201-7335
Telephone:  (214) 462-3000
Facsimile:  (214) 462-3299

ATTORNEYS FOR DEFENDANT
ACE AMERICAN INSURANCE CO.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of September, 2014, a true and correct copy of the above and foregoing was sent to Plaintiff's counsel, via ECF at the following address:

Roy L. Barnes
Jesus Garcia, Jr.
Tucker, Barnes, Garcia & De La Garza, P.C.
712 Main Street, Suite 1600
Houston, TX 77002
***Attorneys for Plaintiff***

/s/ Alicia G. Curran
Alicia G. Curran

LEGAL\20259973\3 00011.0070.000/343665.000