IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| NICKLOS DRILLING COMPANY, Plaintiff, | § § § | |
| VS. | § § | Civil Action No. 6:14-21 |
| ACE AMERICAN INSURANCE COMPANY, Defendant. | § § § § | |

# DEFENDANT ACE AMERICAN INSURANCE COMPANY'S REPLY TO PLAINTIFF'S RESPONSE TO AAIC'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

/s/ Alicia G. Curran
Alicia G. Curran, Attorney-in-Charge
State Bar Number 12587500
Southern District Bar Number 19226
acurran@cozen.com

Of Counsel:
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas 75201-7335
Telephone: (214) 462-3000
Facsimile: (214) 462-3299

DATED: September 15, 2014

ATTORNEYS FOR DEFENDANT
ACE AMERICAN INSURANCE
COMPANY

# DEFENDANT ACE AMERICAN INSURANCE COMPANY'S REPLY TO PLAINTIFF'S RESPONSE TO AAIC'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE:

COMES NOW, Defendant ACE AMERICAN INSURANCE COMPANY ("ACE") and files this its reply to the response filed by Nicklos Drilling Company ("Nicklos") to ACE's motion for summary judgment, and respectfully shows as follows:

## I. SUMMARY OF REPLY

ACE's Motion for Summary Judgment relies on the Policy it issued to Miramar Petroleum, Inc. ("Miramar") and the petition(s) filed by Miramar against Nicklos to demonstrate that it had and has no duty to defend or indemnify Nicklos, a claimed additional insured under the Policy, in the Underlying Lawsuit. Nicklos' attempts to direct the Court away from these "eight corners" and instead consider alleged extrinsic facts and arguments should be disregarded. Additionally, Nicklos would have this Court consider as a part of Miramar's damage model the equipment that Nicklos lost in the hole. Because Miramar's pleadings only seek damages for its inability to access valuable petroleum reserves, such a consideration is not proper. Finally, as to Nicklos' Texas Insurance Code allegations, in its response, Nicklos does not address a §541.061 cause of action, but only a §542.051 cause of action, therefore waiving any § 541.061 cause of action. Additionally, since not only does Nicklos not have a viable basis for a Texas Insurance Code claim since ACE has no duty to defend or indemnify Nicklos, but Nicklos' has not provided any facts that demonstrate it has been damaged by ACE's conduct, a necessary element of its Texas Insurance Code causes of action.

Consequently, as demonstrated by ACE's motion for summary judgment and its response to Nicklos' partial motion for summary judgment, which are incorporated by reference herein, summary judgment in favor of ACE is proper.

## II. ARGUMENT AND AUTHORITIES

### A. The Professional Services Exclusion is an Absolute Bar to any Defense Obligation.

Nicklos' attempt to distinguish *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 426 (5th Cir. 2010) fails. In *Ford*, Admiral alleged it hired Ford to fulfill a contract to "perform adequate and competent drilling operations," and it was Ford's breach of this contract which caused the blowout.[1] Miramar's allegations against Nicklos are indistinguishable. From its Original Petition to its Third Amended Petition, Miramar alleges that Nicklos had experience in the region, should have recognized the well was on the verge of blowing out and the mud weight was insufficient, and its failures were negligent and in breach of its contract with Miramar. Therefore, just as in *Ford*, the Underlying Lawsuit alleges the existence of and failure by Nicklos to properly perform the very services for which Miramar required its specialized knowledge, *i.e.* the effect of mud and pressure in well drilling operations.

Nor is ACE's Policy limited solely to engineering services. Instead, the Policy defines categories of "professional services" barred by its terms. Professional Services that apply to the very conduct described by Nicklos include supervisory or inspection activities, as well as any other professional services provided by the insured. [Doc 9-1

---

[1] *Id.* at 426.

(ACE 00026)]. Texas courts define professional services as those tasks that involve labor, skill, education, as well as specialized knowledge.[2] Although professional services are predominantly mental or intellectual rather than physical or manual, simply because the allegations involve some non-professional elements does not override their classification as professional.[3] Moreover, the professional services exclusion at issue here broadens the scope beyond engineering activities and includes "[a]ny other professional services provided by the insured." *Id.* Thus, Nicklos' reliance on the line of cases that define "engineering services" is inapplicable. [Doc. 11, p. 2-3]. Focusing solely on the factual allegations contained in Miramar's pleadings, Nicklos was contracted to provide services which required specialized knowledge and training and it was Nicklos' failure to render those services which led to the blowout.[4]

Finally, Nicklos continues to look outside the four corners of the pleadings to interject facts into this case that are simply not alleged. In analyzing the professional service exclusion, the *Gore* case, upon which Nicklos relies, states the proper inquiry is "whether the plaintiff's injury is caused by a breach of the professional standard of care."[5] In *Gore*, the issue was whether the contractor designed the aircraft improperly or

---

[2] *See Utica Natl. Ins. Co. of Texas v. American Indem. Co.*, 141 S.W.3d 198, 200 (Tex. 2004); *Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 Fed. Appx. 267, 271 (5th Cir. 2008) (*quoting Atl. Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476-477 (Tex. App.—Dallas 1998, pet. den.)).

[3] *See Ford*, 607 F.3d at 426.

[4] *Id.*

[5] *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 372 (5th Cir. 2008).

whether the worker implemented the design incorrectly. That is not what Miramar pleads in the Underlying Lawsuit. What Miramar pleads is that it retained Nicklos to have a specialized knowledge of the application and effect of mud in a well and that Nicklos failed to recognize that the well was on the verge of blowing out and that the mud weight was insufficient. Miramar makes no allegation as to the physical aspects of Nicklos' work. These allegations demonstrate the specialized knowledge found in *Ford* and not the type of potential ordinary negligence at issue in *Gore*. Because Miramar unequivocally places the blame on the professional services rendered by Nicklos, the professional services exclusion negates the duty to defend.

Accordingly, because the damages sought by Miramar are allegedly due to Nicklos failing to render proper professional services, the Designated Professional Services exclusion serves to preclude coverage.

**B. Miramar's Petition does not seek damages for the Equipment, Drill Pipe and Tools broken in the Well.**

It is Nicklos, not ACE that ignores the "eight corners" rule. The Court should not accept Nicklos' invitation to look outside of the Policy and pleadings. This is not a case where the coverage facts and the underlying facts do not overlap. Where there are mixed or overlapping extrinsic evidence, *Guideone* does not allow the admission of extrinsic evidence.[6] Where, as here, the issue is one that touches on the merits of the underlying third-party claim, extrinsic evidence is not permitted.[7] Miramar simply has not alleged

---

[6] *GuideOne*, 197 S.W.3d at 309.
[7] *Id.*

that it seeks damages for Nicklos' lost drilling equipment. Instead, Miramar alleges that Nicklos' own acts and conduct caused the obstruction of Miramar's access to its well reserves. The word "broken" does not appear in Miramar's petition. And in fact, if the equipment is still in the well, available for use, then exclusion 2.m. precludes coverage.

C. **The Underground Endorsement does not supersede the printed-form exclusions.**

Nicklos misplaces its reliance on *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 115-16 (5th Cir.2010). ACE restates, as though set forth herein verbatim, its position and argument stated in its Response to Plaintiff's Motion for Summary Judgment. [Doc. 12, pp. 14-15] Contrary to Nicklos' argument, the ACE Underground Endorsement does not contain a grant of coverage. Instead it defines two new terms to be used in conjunction with the main policy form, "underground resources hazard" and "underground equipment hazard." It also provides for a different limit of insurance when there is "property damage" to the items defined as "underground resources hazard" or "underground equipment hazard" than the limit of insurance for other occurrences. Further, it deletes exclusion 2.j.4. of the main policy form when "property damage" to the items defined as "underground equipment hazard" are involved.

Nicklos' contention would eliminate all of the 2.j. exclusions in the main form, rendering Section II of the Endorsement superfluous and meaningless.[8] Unlike the policy

---

[8] Interpretation of insurance policies is governed by the same rules that govern interpretation of other contracts. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). The court primarily seeks to give effect to the written expression of the parties' intent. *Id.* It must read all parts of the contract together and "must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State*

in *Bay Rock*, Section II of the Endorsement modifies exclusion 2.j.(4) to create an exception for personal property within the care custody and control of the insured and included within "property damage" to the items defined within the "underground resources hazard" or "underground equipment hazard." It would be unnecessary for the parties to modify 2.j.(4) to create an exception for the underground hazards if the parties intended for the Endorsement to override all the 2.j. exclusions as contended by Nicklos.

Finally, unlike Mid-Continent in the *Bay Rock* case, ACE was not directly insuring the driller. It was insuring the operator of the well, Miramar. Therefore, there is no situation where insurance coverage was a nullity. Instead, the ACE Policy merely excluded Miramar's own property (2.j.1.), Miramar's work during ongoing operations (2.j.5.), and Miramar's own work (2.j.6.). The ACE Policy would still insure work done by Miramar for others.

D. **ACE Did Not Violate the Texas Insurance Code**

1. **No Violation of Chapter 541.060, *et seq.***

Nicklos does not address its claims under Chapter 541.060, *et seq.* in its Response to ACE's motion for summary judgment. Therefore, either Nicklos has dropped those claims or its claims were only under Chapter 542.051, *et seq.* and when referencing "unfair settlement practices" in its Petition, did not mean to invoke the Unfair Settlement

---

*Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) (*citing Forbau*, 876 S.W.2d at 133-34). The plain language of an insurance policy will be given effect -- even with respect to exclusionary language -- "when the parties' intent may be discerned from that language." *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977); *see also Hofland v. Firemans Fund Ins. Co.*, 907 S.W.2d 597, 599 (Tex. App.—Corpus Christi 1995, no writ) (holding that an exclusion should be accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated).

Practices Act contained in Section 541.060, Tex. Ins. Code. At any rate, Nicklos has provided no evidence:

(1) that ACE engaged in any one or more of the enumerated unfair settlement practices with respect to its claim; <u>and</u>

(2) that ACE's liability to pay or defend under the policy was reasonably clear; <u>and</u>

(3) that a reasonable insurance company, having conducted an investigation of the claim, would have known that its liability was reasonably clear and there was no basis to deny or delay the claim.[9]

For Nicklos to prevail on its Unfair Settlement Practices claim, if any, there must be a genuine issue of material fact that ACE "commit[ted] some act, so extreme, that would cause injury independent of the policy claim" or "fail[ed] to timely investigate . . . [Nicklos'] claim."[10] Evidence that "merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith."[11] Extra-contractual damages under the Texas Insurance Code are "reserved for cases in which an insurer knew its actions were false, deceptive, or unfair."[12]

First, there is no evidence of an act by ACE that is so extreme that it caused injury to Nicklos independent of its claims under the Policy. To the contrary, the pleadings and discovery on file with this court demonstrate that The First Liberty Insurance Corp., a subsidiary of Liberty Mutual Insurance Company, issued a general liability policy to

---

[9] *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997).

[10] *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 214 (Tex. 1988); *see also United Serv. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 442 (Tex. App.—San Antonio 2002, no pet.)

[11] *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).

[12] *Minnesota Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 775 (Tex. 2006).

Nicklos and that The First Liberty Insurance Corp. is an entity financially interested in the outcome of this case, *e.g.* Nicklos' liability carrier that is providing a defense to Nicklos in the Underlying Lawsuit. [Doc. 5] Second, any disagreement between the parties is a bona fide dispute as to whether insurance coverage is afforded to Nicklos as an additional insured under Miramar's commercial general liability policy issued by ACE. This fact is aptly demonstrated by the summary judgment pleadings by the two parties. Third, Nicklos has presented no evidence that it is out-of-pocket any monies or has suffered any other monetary damages that demonstrate that it was damaged by the acts of ACE.

For any or all of these reason, summary judgment is proper in favor of ACE on any claims, if any, Nicklos has brought under Section 541.060, Tex. Ins. Code.

2. **No Violation of Chapter 542.051,** *et seq.*

Nicklos asserts that ACE failed to timely accept or reject its claim, submit a reservation of rights, or promptly provide a reasonable explanation of the basis for its denial of the claim, in violation of Texas Insurance Code acknowledge its claim, in violation of Tex. Ins. Code § 542.055; (2) accept or deny Plaintiffs' entire claim within the statutorily mandated time, in violation of Tex. Ins. Code §§ 542.051-.061. But the Prompt Payment of Claims Act only applies if ACE owed a defense to Nicklos in the Underlying Lawsuit. Because ACE did not and does not owe a defense to Nicklos against any of the petitions filed in the Underlying Lawsuit, ACE owes no damages under Texas Insurance Code Chapter 542.051. What is more, Nicklos has provided no evidence that it is out-of-pocket any monies for its defense of the Underlying Lawsuit.

Even if ACE were liable for failure to provide a defense, unless Nicklos actually is out-of-pocket monies for such defense, no damages under § 542.060 are due and owing.[13] Pursuant to § 542.060, an insurer that fails to comply with the Prompt Payment of Claims Act is only liable to pay <u>the holder of the policy</u> (or the beneficiary) making the claim under the policy. Because Nicklos made the claim, only Nicklos has a right to damages. An insurance company that defends its insured is not entitled to damages under the Prompt Payment of Claims Act from another insurer.[14]

### III. CONCLUSION

ACE American Insurance Company therefore requests that judgment in its favor be entered with respect to its declaratory judgment that it owes no duty to defend Nicklos. Further, since Nicklos was granted its summary judgment in the Underlying Lawsuit, there can be no duty to indemnify Nicklos and ACE requests judgment in its favor for same. ACE further requests a judgment in its favor that Nicklos' take nothing for its cause of action for breach of contract, violations of the Texas Insurance Code, and damages and attorneys' fees therefrom. ACE further requests all other relief to which it may be entitled, at law or in equity.

---

[13] Damages under the Texas Prompt Payment of Claims Act are assessed against the insurer based on the dates the insured paid each bill for attorney's fees. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 20 (Tex.2007) citing *Primrose Operating Co. v. National American Insurance Co.*, 382 F.3d 546, 565 (5th Cir.2004).

[14] *American Southern Ins. Co. v. Buckley*, 748 F.Supp.2d 610, 626 (E.D. Tex. 2010); *cf Berkley Region Ins. Co. v. Philadelphia Indem. Ins. Co.*, 2011 WL 9879170 *8-9 (W.D. Tex. Apr. 27, 2011)(not reported) reversed on other grounds by *Berkley Region Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342, 352 (5th Cir. Tex. 2012) which did not address the "anti-assignment" argument because not raised on appeal.

Respectfully submitted,

/s/ Alicia G. Curran
Alicia G. Curran, Attorney-in-Charge
State Bar Number 12587500
Southern District Bar Number 19226
acurran@cozen.com

Of Counsel:
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas 75201-7335
Telephone: (214) 462-3000
Facsimile: (214) 462-3299

ATTORNEYS FOR DEFENDANT
ACE AMERICAN INSURANCE CO.

# CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2014, a true and correct copy of the above and foregoing was sent to Plaintiff's counsel, via ECF at the following address:

Roy L. Barnes
Jesus Garcia, Jr.
Tucker, Barnes, Garcia & De La Garza, P.C.
712 Main Street, Suite 1600
Houston, TX 77002
*Attorneys for Plaintiff*

/s/ Alicia G. Curran
Alicia G. Curran

LEGAL\20700297\1 00011.0070.000/343665.000