IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| NICKLOS DRILLING COMPANY, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 6:14-21 |
| | § | |
| ACE AMERICAN INSURANCE | § | |
| COMPANY, | § | |
|     Defendant. | § | |

**DEFENDANT ACE AMERICAN INSURANCE COMPANY'S
SUR-REPLY TO PLAINTIFF'S REPLY TO
AAIC'S RESPONSE TO PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Respectfully submitted,

  /s/ Alicia G. Curran
Alicia G. Curran, Attorney-in-Charge
State Bar Number 12587500
Southern District Bar Number 19226
acurran@cozen.com

Of Counsel:
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas 75201-7335
Telephone: (214) 462-3000
Facsimile: (214) 462-3299

DATED: September 19, 2014    ATTORNEYS FOR DEFENDANT
    ACE AMERICAN INSURANCE COMPANY

# DEFENDANT ACE AMERICAN INSURANCE COMPANY'S SUR-REPLY TO PLAINTIFF'S REPLY TO AAIC'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE:

COMES NOW, Defendant ACE AMERICAN INSURANCE COMPANY ("ACE") and files this its sur-reply to the reply filed by Nicklos Drilling Company ("Nicklos") to Nicklos' motion for summary judgment, and respectfully shows as follows:

This duty to defend coverage lawsuit involves an underlying lawsuit by Miramar Petroleum, Inc. ("Miramar"), an oil and gas operator, as well as owner of a lease of minerals. Miramar sued the team conducting various aspects of Miramar's work on its oil lease known as the Sartwelle #1 well because the team failed to recognize that the mud weight was insufficient and a blowout [a discharge of gas, e.g. pollutant] resulted. Nicklos is one of the companies doing Miramar's work.

ACE issued its commercial general liability policy to Miramar. Nicklos claims that it is an additional insured under Miramar's policy and that ACE owes it a defense regarding Miramar's lawsuit against Nicklos. For purposes of the duty to defend analysis and application of the policy's exclusions, the issues include Miramar's ownership of the well and reserves and that it was Miramar's "work" that was at issue and that "work" by definition includes the work that Nicklos was doing.

Against this backdrop and applying the rules of *GuideOne* and *Pine Oak*, ACE owes no defense obligation to Nicklos, an additional insured (and therefore an or the insured and not "you" or "your" under the policy).

## A. The Duty to Defend Analysis Does Not Permit Use of Mixed Extrinsic Evidence and What If Scenarios

In its Reply, Plaintiff argues that ACE and this Court should consider extrinsic evidence in making the "duty to defend" determination. The Texas Supreme Court, addressing the use of extrinsic evidence in situations much closer than the instant case, held that extrinsic evidence should not be considered. More particularly, *GuideOne* did not allow the use of an affidavit to correct or amplify the facts plead by the plaintiff such that the insurer would not have a defense obligation. And then, faced with the opposite situation of an insured using extrinsic evidence, the Texas Supreme Court – even after finding a defense duty was owed by the insurer on four other cases arising from the same set of facts – held in *Pine Oak*[1] that because the pleadings did not allege that a subcontractor had caused the damage, the insurer had no defense obligation as to the fifth lawsuit. More particularly, the Court held:

> . . . "We will not read facts into the pleadings. . . . Nor will we look outside the pleadings, or imagine factual scenarios which might trigger coverage." [] Instead, "an insurer is entitled to rely solely on the factual allegations contained in the petition in conjunction with the terms of the policy to determine whether it has a duty to defend." []
>
> . . . .
>
> In deciding the duty to defend, the court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition. The duty to defend depends on the language of the policy setting out the contractual agreement between insurer and insured. [] A defense of third-party claims provided by the insurer is a valuable benefit granted to the insured by the policy, separate from the duty to indemnify. [] But the insurer's duty to defend is limited to those claims actually asserted in an underlying suit. Great American's policy provides that it shall "have the right and duty to defend any 'suit'

---

[1] *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)

seeking" damages for bodily injury or property damage covered by the policy. "Suit" is defined as "a civil proceeding in which damages because of [property damage or other injuries] to which this insurance applies are alleged." The policy imposes no duty to defend a claim that might have been alleged but was not, or a claim that more closely tracks the true factual circumstances surrounding the third-party claimant's injuries but which, for whatever reason, has not been asserted. To hold otherwise would impose a duty on the insurer that is not found in the language of the policy. Such a construction would subject an insurer to common-law and statutory liability for failing to defend the insured against a third-party claim that has not been alleged, despite policy language limiting the duty to defend to claims that have been alleged.

Such a construction would also "conflate the insurer's defense and indemnity duties," since the duty to defend turns on the "factual allegations that potentially support a covered claim," while "the facts actually established in the underlying suit control the duty to indemnify." [] The duty to defend protects the insured by requiring a legal defense to allegations without regard to whether they are true, [] but it does not extend to allegations, true or false, that have not been made. …

*Id.* (emphasis added) (internal citations omitted).

Nicklos uses the affidavit of Bill Brannan [Doc. 9-15] as extrinsic evidence to attempt to change Miramar's allegation that its expectation of the professional services rendered by Nicklos were inadequate. Miramar does not allege that Nicklos were "roughnecks" or engaging in physical labor at the time of blowout. Instead, Miramar refers to and depends upon Nicklos' level of knowledge in asserting that it breached the contract and standard of care owed Miramar.

Nicklos also reads "what if" facts into Miramar's pleadings. First, it attempts to modify Miramar's statement that its inability to access the well reserves due to equipment, drill pipe, and tools that were broken and/or stuck in the well as a result of the blowout, into a prayer for damages for that equipment. [Doc 9-6, ¶20]. Second, it

surmises that the alleged breach by Nicklos could have been caused by one of Nicklos' workers reasoning that such an act would be an act of ordinary negligence and not a violation of a standard of professional care. Again, Miramar clearly and specifically alleges Nicklos had experienced well operators on site who should have known the well was on the verge of a blowout.

Based on the Texas Supreme Court's holdings and because there are no extrinsic facts at issue that are coverage facts only, Nicklos' use of extrinsic evidence and "what if" conjectures should not be used in determining whether ACE owes Nicklos a defense in the Underlying Lawsuit.

## B. Exclusion 2.j(6) refers to Miramar's, not Nicklos', work

Nicklos also attempts to limit the definition of "your work" to the work that Nicklos was doing in an effort to avoid the effect of the "that particular part" limiting language of 2.j.(6). But Nicklos improperly applies the exclusion. "Your work" is defined as "[w]ork or operations performed by you or on your behalf." "You" and "Your" refers to Miramar. Miramar's work was the entire well that it was subcontracting out to others, including Nicklos. Therefore, the exclusion applies to the entire well. Moreover, the blowout occurred while Nicklos was using the equipment, drill pipe, and tools in the hole to perform the drilling operations. Moreover, by its Third Amended Petition, Miramar alleges Nicklos is unable to close the blowout preventers because the rig equipment is not in good condition. Based on Miramar's allegations against Nicklos, the "property damage," *i.e.* the loss of the well and access to the reserves, arose out of Miramar's operations or work performed on behalf of Miramar by Nicklos, including its

failure to recognize the mud weight on the well was insufficient and its inability to close the blowout preventer due to the poor condition of the rig equipment.

## C. The Exclusion in the Pollution Endorsement Applies to a Blowout

Miramar alleges its damages were caused by a blowout of the well. A blowout inherently involves the discharge of gas from a well. The Pollution Endorsement excludes:

> [A]ny injury, damage, expense, costs, "loss", seepage, migration, release or escape of "pollutants" at, from, related to any: …
>
> 5. Damage to real or personal property owned by, leased to, or rented by the "insured", or otherwise in the care, custody, or control of the "insured". This exclusion 5. does not apply to "remediation costs".

Because Miramar alleges its damages arise from the blowout, and includes loss of the well and the mineral reserves, Section III.C of the Energy Pollution Liability Extension Endorsement bars coverage.

ACE American Insurance Company therefore requests that judgment in its favor be entered with respect to its declaratory judgment that it owes no duty to defend Nicklos. Further, since Nicklos was granted its summary judgment in the Underlying Lawsuit, there can be no duty to indemnify Nicklos and ACE requests judgment in its favor for same. ACE further requests a judgment in its favor that Nicklos' take nothing for its cause of action for breach of contract, violations of the Texas Insurance Code, and damages and attorneys' fees therefrom. ACE further requests all other relief to which it may be entitled, at law or in equity.

Respectfully submitted,

/s/ Alicia G. Curran
Alicia G. Curran, Attorney-in-Charge
State Bar Number 12587500
Southern District Bar Number 19226
acurran@cozen.com

Of Counsel:
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas 75201-7335
Telephone: (214) 462-3000
Facsimile: (214) 462-3299

ATTORNEYS FOR DEFENDANT
ACE AMERICAN INSURANCE CO.

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2014, a true and correct copy of the above and foregoing was sent to Plaintiff's counsel, via ECF at the following address:

Roy L. Barnes
Jesus Garcia, Jr.
Tucker, Barnes, Garcia & De La Garza, P.C.
712 Main Street, Suite 1600
Houston, TX 77002
***Attorneys for Plaintiff***

        /s/ Alicia G. Curran
        Alicia G. Curran

LEGAL\20764142\1 00011.0070.000/343665.000